IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN MARK LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01192-STA-dkv |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Kevin Mark Long filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on December 11, 2012. On March 18, 2013, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on July 18, 1977, and he has a high school education. He has past relevant work as a convenience store clerk. He initially alleged disability beginning October 29, 2010, but amended his onset date to January 1, 2011, at the hearing. He claims to be disabled due to due to diabetes, neuropathy, and depression.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2015; (2) Plaintiff has not engaged in substantial gainful activity since his alleged onset date; (3) Plaintiff has the following severe impairments: diabetes mellitus and peripheral arterial disease; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform the full range of sedentary work; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the

---

[8] R. 13 - 19.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F. 2d 1168, 1173 (6th Cir. 1990).

Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, there are a significant number of jobs existing in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred by failing to find all his impairments to be severe, by failing to include a function-by-function assessment in the residual functional capacity

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

assessment, by relying on an unsigned consultative examination report, and by improperly weighing the opinion of his treatment physician. Plaintiff's arguments are not persuasive.

The ALJ found that Plaintiff had severe impairments of diabetes mellitus and peripheral arterial disease at step two and then moved on to the next steps in his analysis. Plaintiff contends that the ALJ should have also found his neuropathy and depression to be severe at step two.

When the ALJ finds that at least one of the claimant's alleged impairments is severe, as in the present case, the disability claim survives the step two screening process. Because the regulations instruct the ALJ to consider both severe and nonsevere impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as nonsevere will not be ignored altogether.[14] For this reason, an ALJ does not err when he decides that some of the claimant's impairments are not severe but finds that other impairments are severe and proceeds with his analysis, as long as the ALJ considers all of the claimant's impairments in the remaining steps of the disability determination.[15]

Here, the ALJ's decision shows that he did consider all of Plaintiff's impairments in his analysis. In discussing Plaintiff's neuropathy, the ALJ pointed out that treatment notes failed to establish that neuropathy caused more than a minimal limitation on Plaintiff's ability to perform work-related activities. Plaintiff's gait was generally characterized as "normal" or "unremarkable," and he demonstrated full motor strength and normal tone in all extremities.[16] Thus, the ALJ provided sufficient reasons to explain why Plaintiff's neuropathy was not severe.

---

[14] 20 C.F.R. § 416.945(a)(2).

[15] *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting *Maziarz v. Secy of Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987)).

[16] R. 260, 297, 323-36.

5

In determining the severity of a claimant's mental impairments, an ALJ uses the special technique set out in 20 C.F.R. §§ 404.1520a and 416.920a. This technique requires the ALJ to consider four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) extended episodes of decompensation.[17] After considering each of these functional areas, the ALJ determined that Plaintiff's depression was not severe. Based primarily on Plaintiff's own function reports, which detailed behaviors incompatible with severe mental impairment, the ALJ found that Plaintiff was no more than mildly limited in any of the first three of these functional areas and had not experienced any episodes of decompensation, of any duration.[18] The ALJ also noted the absence of ongoing mental health treatment as further evidence that Plaintiff's mental impairments were less than severe.[19] Because the ALJ properly considered the entire record in reaching his severity determination, there is no error at step two.

Next, Plaintiff argues that the ALJ erred by failing to include a "function-by-function assessment" in his residual functional capacity finding. However, the Sixth Circuit does not require a written function-by-function assessment in the residual functional capacity discussion. As the Sixth Circuit has stated, "[w]hile SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for

---

[17] 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

[18] R. 144-51, 171-78.

[19] *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (stating that the ALJ was justified in finding that Plaintiff's failure to seek mental health treatment reflected on the severity of the impairment).

which no limitation is alleged."[20] Moreover, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion."[21] Instead, an ALJ fully complies with SSR 96-8p by specifying the claimant's exertional and non-exertional abilities and discussing the limitations that were at issue.[22] Here, the ALJ considered the entire record, specifically discussed Plaintiff's complaints and the opinion evidence, and found Plaintiff limited to sedentary work, thus satisfying the requirements of SSR 96-8p.

Plaintiff argues that the ALJ erred when he relied on the opinion submitted by Dennis Wilson, Ph.D., because it was "unsigned." To the contrary, Dr. Wilson's report was electronically signed on March 20, 2011.[23] Thus, Dr. Wilson's report was properly submitted.

Plaintiff also complains of the weight given to the opinion of his treating physician, Dr. James Wilson. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[24] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a

---

[20] *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations and quotation marks omitted).

[21] *Id.* (internal citations and quotation marks omitted).

[22] *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) (citation omitted).

[23] R. 257-58.

[24] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

source who has examined the claimant but does not have an ongoing treatment relationship.[25] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[26] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[27]

In contrast, it is well-established that the findings and opinions of treating physicians are entitled to substantial deference.[28] A treating physician's opinion is entitled to substantially greater weight than the contrary opinion of a non-examining medical advisor.[29] If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.[30] Furthermore, "[i]f the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a

---

[25] *Id.* §§ 404.1502, 404.1527(c)(2).

[26] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

[27] 20 C.F.R. § 404.1527(c).

[28] *See Walters*, 127 F.3d at 529–30; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting that "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

[29] *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

[30] 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."[31]

Closely associated with the treating physician rule, "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."[32] Moreover, "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"[33]

Plaintiff argues that the ALJ erred by failing to properly weigh the checklist form submitted by Dr. Williams and to state exactly how much weight the opinion was given. Dr. Williams opined that Plaintiff could sit for only four hours per eight-hour work day and that Plaintiff was limited to occasional twisting, stooping, crouching, and climbing of stairs and ladders.[34] Although the checklist provided Dr. Williams with a space in which to explain the medical findings that supported such postural limitations, he left that portion of the form blank. Noting that he found Dr. Williams' opinion more limiting than necessary in light of the objective evidence and Plaintiff's reported daily activities, the ALJ did not give the opinion controlling

---

[31] *Blakley*, 581 F.3d at 406 (citation omitted).

[32] *Id.* (citation omitted).

[33] *Id.* (citation omitted).

[34] R. 468-69.

weight.[35] Instead, he gave the opinion weight to the extent that it was consistent with the residual functional capacity finding.

In weighing a medical opinion, an ALJ may consider the degree to which the doctor explains and provides support for his opinion pursuant to 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3). An ALJ need not give controlling weight to a checklist form submitted by a treating doctor if that form has no explanations, particularly when it is inconsistent with the treatment records, as in the present case.[36] Dr. Williams' opinion consisted of a short checklist form with little supporting explanation.[37] Because Dr. Williams failed to explain how Plaintiff's impairments caused such extreme limitations, his opinion was reasonably due less weight. "Nor [was] it entitled to any particular weight."[38]

> "[A] treating physician's opinion is only entitled to such ... deference when it is a medical opinion." *Turner v. Comm'r of Soc. Sec.*, 381 [F. App'x] 488, 492–93 (6th Cir. 2010). If the treating physician instead submits an opinion on an issue reserved to the Commissioner - such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors - his decision need only 'explain the consideration given to the treating source's opinion.'" *Id.* at 493 (quoting Soc. Sec. Rul. 96–5p, 61 Fed.Reg. 34474). The opinion, however, "is not entitled to any particular weight."[39]

---

[35] R. 17 (finding the opinion of Dr. Williams to be "overly limiting when taken in context with the objective medical evidence and the claimant's reported activities of daily living").

[36] *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (citation omitted).

[37] R. 468-69.

[38] *Curler*, 561 F. App'x at 471 (citations omitted) ("Since the solicited information is not a medical opinion, but rather an opinion as to Curler's inability to work, it is not entitled to controlling weight. Nor is it entitled to any particular weight. Despite prompts following each section of the form instructing that 'supportive medical findings [be identified]' and that 'pertinent clinical notes or test results [be attached],' Dr. Ingram left blank every available area for remarks and universally failed to include any references, notes, or test results.")

[39] *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013).

Lending support to the ALJ's decision to give Dr. Williams' opinion limited weight is his credibility assessment. The ALJ found that Plaintiff's statements about his symptoms were not entirely credible. Regarding his physical complaints, the ALJ noted the absence of documented end-organ damage due to Plaintiff's diabetes or hypertension, his normal creatinine and blood-urea-nitrogen ("BUN") levels, and the normal x-ray, stress test, and echocardiography reports.[40] The ALJ also observed that the record contained no nerve conduction studies that might have confirmed Plaintiff's peripheral neuropathy. Because objective medical evidence failed to support Plaintiff's subjective allegations, the ALJ could discount the credibility of those claims.

The ALJ considered that Plaintiff's diabetes, leg-numbness, and hypertension responded well to treatment. Plaintiff complained of vision problems, but his blurry vision - and leg-numbness - both improved when he began using an insulin pump, and his high blood pressure responded to medication.[41] Disability is not supported when a claimant's alleged impairments are improved with medication and/or other treatment.[42]

Evidence that Plaintiff failed to comply with treatment recommendations further reduced his credibility. As the ALJ noted, treatment records showed that Plaintiff was not always compliant with his diabetes treatment.[43] Moreover, despite his peripheral arterial disease,

---

[40] R. 290 -317, 348- 350, 398-99, 418, 423.

[41] R. 259, 345, 382-84, 413 - 22, 474, 481, 518 - 530.

[42] *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citation omitted) (evidence that issues improve when using medication supports denial of disability).

[43] R. 422.

Plaintiff continued to smoke cigarettes every day.[44] The fact that Plaintiff continued to smoke indicated that his symptoms were not as severe as he claimed.[45]

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. The Commissioner may carry this burden by applying the grids which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[46] If a claimant suffers from a limitation not accounted for by the grids, the Commissioner may use the grids as a framework for his decision but must rely on other evidence to carry his burden, such as the testimony of a vocational expert.[47] In the present case, the ALJ determined that Plaintiff could perform the full range of sedentary work which leads to a finding of not disabled as directed by Medical-Vocational Rule 201.28.

Because substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Act during the relevant period, the decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: August 10, 2017.

---

[44] R. 259, 295, 322 - 34, 382, 478.

[45] *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (finding that the claimant's smoking was inconsistent with the limitations he alleged).

[46] 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[47] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).